# Exhibit B

## LEGISLATIVE HISTORY CHECKLIST

NJSA:     46:3-23 et al                    (Title 46-- conveyance of real
                                           property-- eliminate sex biased
                                           provisions)

LAWS OF: 1987                              CHAPTER:   357

Bill No:   A2295

Sponsor(s): Randall

Date Introduced:     March 13, 1986

Committee:           Assembly: Judiciary

                     Senate:   Judiciary

Amended during passage:          Yes        Amendments during passage denoted
                                            by asterisks.

Date of Passage:                 Assembly:   September 8, 1986

                                 Senate:     November 12, 1987

Date of Approval:   January 5, 1988

Following statements are attached if available:

Sponsor statement:                          Yes

Committee statement:             Assembly    Yes

                                 Senate      Yes

Fiscal Note:                                 No

Veto Message:                                No

Message on Signing:                          No

Following were printed:

Reports:                                     Yes

Hearings:                                    No

Report, mentioned in statements:

974.90     New Jersey. Commission on Sex Discrimination in the statutes.
W872           Toward economic equity: recommendations for the elimination of sex
1985       discrimination in . . . property statutes. . . . January, 1985. Trenton, 1985.
               (see vol. I-- pp 15-17, ~~executive summary~~) executive summary
               (see vol II pp 619-656)

[SECOND OFFICIAL COPY REPRINT]

# ASSEMBLY, No. 2295

# STATE OF NEW JERSEY

### INTRODUCED MARCH 13, 1986

### By Assemblywoman RANDALL

An Act concerning the elimination of sex as a basis for conferring certain rights and supplementing chapter 3 of Title 46 of the Revised Statutes, and revising and repealing parts of the statutory law.

1    Be it enacted by the Senate and General Assembly of the State
2 *of New Jersey:*
1    1. Section 1 of P. L. 1965, c. 67 (C. 46:3–23) is amended to read as
2 follows:
3    1. Any promise, covenant or restriction in a contract, mortgage,
4 lease, deed or conveyance or in any other agreement affecting real
5 property, heretofore or hereafter made or entered into, which
6 limits, restrains, prohibits or otherwise provides against the sale,
7 grant, gift, transfer, assignment, conveyance, ownership, lease,
8 rental, use or occupancy of real property to or by any person
9 because of race, creed, color, national origin, [or] ancestry, *[mari-
10 tal status]* **marital status** or sex is hereby declared to be void
11 as against public policy, wholly unenforceable, and shall not con-
12 stitute a defense in any action, suit or proceeding. No such promise,
13 covenant or restriction shall be listed as a valid provision affecting
14 such property in public notices concerning such property. The in-
15 validity of any such promise, covenant or restriction in any such
16 instrument or agreement shall not affect the validity of any other
17 provision therein, but no reverter shall occur, no possessory estate
18 shall result, nor any right of entry or right to a penalty or for-

EXPLANATION—Matter enclosed in bold-faced brackets [thus] in the above bill
is not enacted and is intended to be omitted in the law.

Matter printed in italics *thus* is new matter.

Matter enclosed in asterisks or stars has been adopted as follows:

*—Assembly committee amendments adopted June 9, 1986.

**—Senate committee amendments adopted February 19, 1987.

***—Senate committee amendment adopted June 22, 1987.

19 feiture shall accrue by reason of the disregard of such promise,
20 covenant or restriction. This section shall not apply to convey-
21 ances or devises to religious associations or corporations for re-
22 ligious purposes, but, such promise, covenant or restriction shall
23 cease to be enforceable and shall otherwise become subject to
24 the provisions of this section when the real property affected
25 shall cease to be used for such purpose.

26 ***Nothing contained in this section shall be construed to bar*
27 *any person from refusing to sell, rent, lease, assign, or sublease*
28 *any room, apartment or flat in a dwelling or residential facility*
29 *which is planned exclusively for or occupied exclusively for*
30 *individuals of one sex to any individual of the opposite sex on*
31 *the basis of sex. Nothing in this section shall be construed to bar*
32 *any place of public accommodation which is in its nature reasonably*
33 *restricted exclusively to individuals of one sex, which shall include*
34 *but not be limited to any summer camp, day camp, bathhouse,*
35 *dressing room, and comfort station, from refusing, withholding*
36 *from, or denying to any individual of the opposite sex any of the*
37 *accommodations, advantages, facilities, or privileges thereof on the*
38 *basis of sex.****

1 2. R. S. 46:7-1 is amended to read as follows:

2 46:7-1. Whenever a corporation or association, created under
3 any law of this State, shall have made, during its corporate
4 existence, a deed or conveyance of real estate in this State, or of an
5 interest therein, and thereafter shall have ceased to exist by reason
6 of dissolution, death of its members or otherwise, and it shall be
7 discovered that an error exists in such deed or conveyance, any
8 surviving president, vice-president, director or trustee of such
9 defunct corporation or association may, by deed of confirmation,
10 containing a proper recital, correct the error in the original deed or
11 conveyance. If no one of the surviving officers hereinbefore named
12 be living, the oldest adult [son] *child*, or, if there be none living, the
13 oldest adult [grandson]*grandchild* of any such president, vice-
14 president, last surviving director or trustee may make such deed of
15 confirmation. Prior to the making of any such deed of confirmation,
16 the person claiming to be entitled to the benefit of this section shall
17 institute an action in the [County Court of the county in which the
18 affected real estate is situate, or the] Superior Court, against any
19 person within or without the State hereby authorized to make the
20 deed of confirmation. The court may proceed therein in a summary
21 manner or otherwise and, after considering the nature of the error
22 or defect in the original deed or conveyance, and the relief sought,

23 may, if convinced of the merit of the action, direct the proper per-
24 son to execute and acknowledge the confirmatory deed.

25 If the person so directed to execute the confirmatory deed shall
26 fail to comply with the judgment of the court within twenty days
27 after the service of a certified copy thereof [upon him], the court
28 making the judgment may, upon proof thereof, appoint a com-
29 missioner to execute the confirmatory deed.

30 The costs of the action shall be chargeable to the plaintiff.

31 A confirmatory deed executed and acknowledged or proved in
32 accordance with the terms of this section shall be as valid and
33 effective as if duly made, executed and acknowledged or proved
34 under the corporate seal of such corporation or association during
35 the period of its corporate existence.

1 3. R. S. 46:7-2 is amended to read as follows:

2 46:7-2. Where any conveyance of real estate has been, prior to
3 [April sixth, one thousand nine hundred and fifteen] *April 6,*
4 *1915,* made, executed and recorded, in which conveyance it shall
5 appear that the persons therein named as grantees have taken the
6 title to such real estate in behalf of or in the interest of any un-
7 incorporated religious association, society, meeting, congregation
8 or organization, upon condition that the real estate so granted
9 and conveyed shall be held in trust for any specific uses and pur-
10 poses, and such association, society, meeting, congregation or or-
11 ganization shall have thereafter become incorporated as a religious
12 society under the laws of this State, any surviving person or per-
13 sons named in such conveyance as a grantee may, by deed of con-
14 veyance, containing a proper recital, convey the real estate men-
15 tioned in the original conveyance to the religious association,
16 society, meeting, congregation or organization, in behalf of which
17 or in whose interest title to the same was taken, in its present
18 corporate name. If there shall be no such surviving grantee, the
19 oldest adult [son] *child,* or adult [grandson] *grandchild* if such
20 [son] *child* be deceased, of such last surviving grantee may make
21 the deed of conveyance herein provided for.

22 Any deed of conveyance, made by any surviving grantee or
23 grantees, or oldest adult [son] *child* or adult [grandson] *grand-*
24 *child* of the last surviving grantee, shall be as valid and effectual in
25 law as if made and executed by the grantees named in such original
26 conveyance, and the title to such real estate shall thereby vest in
27 the incorporated religious association, society, meeting, congrega-
28 tion or organization, as effectually as if the same had been in-
29 corporated at the time of the original conveyance and had taken
30 title to such real estate directly in its corporate name.

4

1   4. R. S. 46:9-9 is amended to read as follows:

2   46:9-9. All mortgages on real estate in this State, and all
3 covenants and stipulations therein contained, shall be assignable
4 at law by writing, whether sealed or not, and any such assignment
5 shall pass and convey the estate of the assignor in the mortgaged
6 premises, and the assignee may sue thereon in his own name, but,
7 in any such action by the assignee, there shall be allowed all just
8 set-offs and other defenses against the assignor that would have
9 been allowed in any action brought by the assignor and existing
10 before notice of such assignment.

11   [All assignments made under this section by a married woman
12 in her own right and without her husband shall be valid.]

1   5. (New section) A tenancy by entireties shall be created when:

2   a. A husband and wife together take title to an interest in real
3 property or personal property under a written instrument designat-
4 ing both of their names as husband and wife; or

5   b. A husband and wife become the [lesees] *lessees* of real prop-
6 erty or personal property under a written instrument containing
7 an option to purchase designating both of their names as husband
7A and wife; or

8   c. An owner spouse conveys or transfers an interest in real
9 property or personal property to the non-owner spouse and the
10 owner spouse jointly under written instrument designating both
11 of their names as husband and wife.

12   • **[d.]** • *Language which states "...... and ...... , his wife"*
13 *or "......... and ........ , her husband" shall be deemed to*
14 *create a tenancy by the entirety.*•

1   6. (New section) No instrument creating **[any]** **a prop-
2 erty** interest **[in]** **on the part of** a husband and wife
3 shall be construed to create a tenancy in common or a joint tenancy
4 unless it is expressed therein or manifestly appears from the tenor
5 of the instrument that it was intended to create a tenancy in com-
6 mon or joint tenancy.

1   7. (New section) Neither spouse may sever, alienate, or otherwise
2 affect their interest in the tenancy by entirety during the marriage
3 or upon separation without the written consent of both spouses.

1   8. (New section) Upon the death of either spouse, the surviving
2 spouse shall be deemed to have owned the whole of all rights under
3 the original instrument of purchase, conveyance, or transfer from
4 its inception.

1   9. The following **[are]** **is** repealed:

2   **[R. S. 37:2-18

3    R. S. 46:14–1]**

4    P. L. 1947, c. 206 (C. 46:2D–1).

1    10. This act shall take effect on the 90th day after enactment

2  and shall be applicable to all tenancies by entireties which are

3  created on or after the effective date of this act.

---

## CIVIL RIGHTS

Amends or repeals sex-biased provisions in Title 46 concerning conveyance of real property.

# ASSEMBLY, No. 2295

# STATE OF NEW JERSEY

INTRODUCED MARCH 13, 1986

By Assemblywoman RANDALL

AN ACT concerning the elimination of sex as a basis for conferring certain rights and supplementing chapter 3 of Title 46 of the Revised Statutes, and revising and repealing parts of the statutory law.

1  BE IT ENACTED by the Senate and General Assembly of the State
2  of New Jersey:
1    1. Section 1 of P. L. 1965, c. 67 (C. 46:3–23) is amended to read as
2  follows:
3    1. Any promise, covenant or restriction in a contract, mortgage,
4  lease, deed or conveyance or in any other agreement affecting real
5  property, heretofore or hereafter made or entered into, which
6  limits, restrains, prohibits or otherwise provides against the sale,
7  grant, gift, transfer, assignment, conveyance, ownership, lease,
8  rental, use or occupancy of real property to or by any person
9  because of race, creed, color, national origin, [or] ancestry, mari-
10  tal status or sex is hereby declared to be void as against public
11  policy, wholly unenforceable, and shall not constitute a defense
12  in any action, suit or proceeding. No such promise, covenant or
13  restriction shall be listed as a valid provision affecting such prop-
14  erty in public notices concerning such property. The invalidity
15  of any such promise, covenant or restriction in any such instru-
16  ment or agreement shall not affect the validity of any other pro-
17  vision therein, but no reverter shall occur, no possessory estate
18  shall result, nor any right of entry or right to a penalty or for-
19  feiture shall accrue by reason of the disregard of such promise,
20  covenant or restriction. This section shall not apply to convey-

EXPLANATION—Matter enclosed in bold-faced brackets [thus] in the above bill is not enacted and is intended to be omitted in the law.
Matter printed in italics thus is new matter.

21 ances or devises to religious associations or corporations for re-
22 ligious purposes, but, such promise, covenant or restriction shall
23 cease to be enforceable and shall otherwise become subject to
24 the provisions of this section when the real property affected
25 shall cease to be used for such purpose.

1   2. R. S. 46:7-1 is amended to read as follows:

2   46:7-1. Whenever a corporation or association, created under
3 any law of thi State, shall have made, during its corporate
4 existence, a deed or conveyance of real estate in this State, or of an
5 interest therein, and thereafter shall have ceased to exist by reason
6 of dissolution, death of its members or otherwise, and it shall be
7 discovered that an error exists in such deed or conveyance, any
8 surviving president, vice-president, director or trustee of such
9 defunct corporation or association may, by deed of confirmation,
10 containing a proper recital, correct the error in the original deed or
11 conveyance. If no one of the surviving officers hereinbefore named
12 be living, the oldest adult [son] *child*, or, if there be none living, the
13 oldest adult [grandson]*grandchild* of any such president, vice-
14 president, last surviving director or trustee may make such deed of
15 confirmation. Prior to the making of any such deed of confirmation,
16 the person claiming to be entitled to the benefit of this section shall
17 institute an action in the [County Court of the county in which the
18 affected real estate is situate, or the] Superior Court, against any
19 person within or without the State hereby authorized to make the
20 deed of confirmation. The court may proceed therein in a summary
21 manner or otherwise and, after considering the nature of the error
22 or defect in the original deed or conveyance, and the relief sought,
23 may, if convi: ed of the merit of the action, direct the proper per-
24 son to execute and acknowledge the confirmatory deed.

25   If the person so directed to execute the confirmatory deed shall
26 fail to comply with the judgment of the court within twenty days
27 after the service of a certified copy thereof [upon him], the court
28 making the judgment may, upon proof thereof, appoint a com-
29 missioner to execute the confirmatory deed.

30   The costs of the action shall be chargeable to the plaintiff.

31   A confirmatory deed executed and acknowledged or proved in
32 accordance with the terms of this section shall be as valid and
33 effective as if duly made, executed and acknowledged or proved
34 under the corporate seal of such corporation or association during
35 the period of its corporate existence.

1   3. R. S. 46:7-2 is amended to read as follows:

2   46:7-2. Where any conveyance of real estate has been, prior to
3 [April sixth, one thousand nine hundred and fifteen] *April 6,*

4 *1915*, made, executed and recorded, in which conveyance it shall
5 appear that the persons therein named as grantees have taken the
6 title to such real estate in behalf of or in the interest of any un-
7 incorporated religious association, society, meeting, congregation
8 or organization, upon condition that the real estate so granted
9 and conveyed shall be held in trust for any specific uses and pur-
10 poses, and such association, society, meeting, congregation or or-
11 ganization shall ha e thereafter become incorporated as a religious
12 society under the laws of this State, any surviving person or per-
13 sons named in such conveyance as a grantee may, by deed of con-
14 veyance, containing a proper recital, convey the real estate men-
15 tioned in the original conveyance to the religious association,
16 society, meeting, congregation or organization, in behalf of which
17 or in whose interest title to the same was taken, in its present
18 corporate name. If there shall be no such surviving grantee, the
19 oldest adult [son] *child*, or adult [grandson] *grandchild* if such
20 [son] *child* be deceased, of such last surviving grantee may make
21 the deed of conveyance herein provided for.

22     Any deed of conveyance, made by any surviving grantee or
23 grantees, or oldest adult [son] *child* or adult [grandson] *grand-*
24 *child* of the last surviving grantee, shall be as valid and effectual in
25 law as if made and executed by the grantees named in such original
26 conveyance, and the title to such real estate shall thereby vest in
27 the incorporated religious association, society, meeting, congrega-
28 tion or organization, as effectually as if the same had been in-
29 corporated at the time of the original conveyance and had taken
30 title to such real estate directly in its corporate name.

1     4. R. S. 46:9 ) is amended to read as follows:

2     46:9–9. All mortgages on real estate in this State, and all
3 covenants and stipulations therein contained, shall be assignable
4 at law by writing, whether sealed or not, and any such assignment
5 shall pass and convey the estate of the assignor in the mortgaged
6 premises, and the assignee may sue thereon in his own name, but,
7 in any such action by the assignee, there shall be allowed all just
8 set-offs and other defenses against the assignor that would have
9 been allowed in any action brought by the assignor and existing
10 before notice of such assignment.

11     [All assignments made under this section by a married woman
12 in her own right and without her husband shall be valid.]

1     5. (New section) A tenancy by entireties shall be created when:

2     a. A husband and wife together take title to an interest in real
3 property or personal property under a written instrument designat-
4 ing both of their names as husband and wife; or

4

5  b. A husband and wife become the [lessees] ressees of real prop-
6  erty or personal property under a written instrument containing
7  an option to purchase designating both of their names as husband
7A and wife; or

8  c. An owner spouse conveys or transfers an interest in real
9  property or personal property to the non-owner spouse and the
10 owner spouse jointly under written instrument designating both
11 of their names as hu band and wife.

1  6. (New section) No instrument creating any interest in a husband
2  and wife shall be construed to create a tenancy in common or a joint
3  tenancy unless it is expressed therein or manifestly appears from
4  the tenor of the instrument that it was intended to create a tenancy
5  in common or joint tenancy.

1  7. (New section) Neither spouse may sever, alienate, or otherwise
2  affect their interest in the tenancy by entirety during the marriage
3  or upon separation without the written consent of both spouses.

1  8. (New section) Upon the death of either spouse, the surviving
2  spouse shall be deemed to have owned the whole of all rights under
3  the original instrument of purchase, conveyance, or transfer from
4  its inception.

1  9. The following are repealed:

2  R. S. 37:2-18

3  R. S. 46:14-1

4  P. L. 1947, c. 206 (C. 46:2D-1).

1  10. This act shall take effect on the 90th day after enactment
2  and shall be applicable to all tenancies by entireties which are
3  created on or after the effective date of this act.

---

## STATEMENT

This bill amends and repeals certain sex based provisions in
Title 46 concerning conveyances of real property.

This bill also revises New Jersey case law defining the concurrent
ownership of property between husband and wife. At common law,
the husband enjoyed exclusive control and power over entirety
property. By virtue of New Jersey's Married Women's Property
Act, married women's rights in entirety property were increased
to equal those rights previously exercised by the husband alone.
Presently, husband and wife hold marital property as tenants in
common during their joint lives with the right of survivorship
(each one owns the whole) retained as at common law. As tenants
in common each spouse has a separate right to encumber the prop-
erty without the consent of the other spouse.

This bill is proposed based on the recommendation of the Commission on Sex Discrimination in the Statutes. It codifies tenancy by entirety such that during the marriage neither spouse may sever, alienate, or otherwise affect their interest in entirety property during the marriage or upon separation without the mutual written consent of the spouses. This reflects the commission's policy that marriage is an economic partnership.

## CIVIL RIGHTS

Amends or repeals sex-biased provisions in Title 46 concerning conveyance of real property.

STATEMENT TO

# ASSEMBLY, No. 2295

# STATE OF NEW JERSEY

### DATED: JUNE 5, 1986

The Assembly Judiciary Committee reports favorably and with committee amendments Assembly Bill No. 2295.

This bill amends and repeals certain sex based provisions in Title 46 concerning conveyances of real property.

This bill also revises New Jersey case law defining the concurrent ownership of property between husband and wife. At common law, the husband enjoyed exclusive control and power over entirety property. By virtue of New Jersey's Married Women's Property Act, married women's rights in entirety property were increased to equal those rights previously exercised by the husband alone. Presently, husband and wife hold marital property as tenants in common during their joint lives with the right of survivorship (each one owns the whole) retained as at common law. As tenants in common each spouse has a separate right to encumber the property without the consent of the other spouse.

To protect the non-debtor spouse and ensure that marital property is jointly managed, this bill codifies tenancy by entirety. The bill creates a presumption that husband and wife hold as tenants by the entirety whenever they hold property together, unless the document of title expresses otherwise. The bill provides that neither spouse may sever, alienate, or otherwise affect his or her interest in the entirety property during the marriage or upon separation without the mutual written consent of both spouses. Upon death, the surviving spouse owns the property as a whole. The bill also provides that tenancy by the entirety should apply to personal property held by husband and wife.

In its original form, the bill added marital status and sex to the protected classes under the statute prohibiting the use of discriminatory clauses in the conveyance of real property (N. J. S. 46:3–23). By amendment, marital status was omitted from the protected classes that would have been added to the statute under the bill. The committee felt that this may have operated contrary to pre-nuptial agreements persons may wish to enter. However, the committee expressed

its anticipation that it would consider forthcoming legislation addressing such discrimination as it affected leases and rental property. Legislation is also anticipated which would deal with pre-nuptial agreements.

The committee also amended the bill to clarify the methods by which tenancies by the entirety may be created.

SENATE STATE GOVERNMENT AND FEDERAL AND
INTERSTATE RELATIONS AND VETERANS AFFAIRS
COMMITTEE

STATEMENT TO

# ASSEMBLY, No. 2295

[OFFICIAL COPY REPRINT]

with Senate committee amendments

# STATE OF NEW JERSEY

## DATED: FEBRUARY 19, 1987

The Senate State Government Committee reports favorably and with committee amendments Assembly Bill No. 2295 OCR.

This bill amends and repeals various provisions in Title 46 of the Revised Statutes concerning the conveyance of real property. It also supplements Title 46 with provisions concerning concurrent ownership of real and personal property by a husband and wife.

The bill prohibits the use of restrictive covenants in instruments affecting real property, such as contracts, mortgages, leases, deeds or conveyances, by prohibiting the sale, assignment, rental or other transfers to any person because of the person's sex or marital status. Currently the law prohibits such restrictions for reasons of race, creed, color, national origin, or ancestry. The bill also makes gender-neutral who may execute a deed of confirmation in the event of dissolution of a corporation or the death of its members.

With respect to concurrent ownership, the bill provides that a tenancy by the entirety shall be created when a husband and wife take title to an interest in real or personal property as husband and wife; or become lessees of real or personal property as husband and wife; or when an owner spouse transfers real or personal property to the non-owner spouse jointly. During a marriage, or upon separation, neither spouse may sever, alienate, or otherwise affect the spouse's interest in tenancy by the entirety without the written consent of the other spouse. Upon death, the surviving spouse shall own the property as a whole. Tenancy in common or joint tenancy, either of which enables each spouse to encumber the property without the consent of the other, must be expressly stated in any instrument creating a property interest.

The bill repeals P. L. 1947, c. 206, which creates a presumption that when a mortgage is entered into or assigned to a husband and wife, the property is held as joint tenants.

The committee amended the bill to:

(1) reinsert the prohibition against restrictive covenants in real estate transfers or conveyances on the basis of marital status, believing that including marital status would not affect the validity of pre-nuptial agreements;

(2) clarify certain language; and

(3) eliminate the repeal of R. S. 37:2–18 and R. S. 46:14–1.

As amended, Assembly Bill No. 2295 OCR Sca is identical to Senate Bill No. 1646 Sca.

# STATE OF NEW JERSEY

### DATED: JUNE 22, 1987

The Senate Judiciary Committee reports favorably and with committee amendments Assembly Bill No. 2295 OCR (Senate Reprint).

The bill amends and repeals various provisions in Title 46 of the Revised Statutes concerning the conveyance of real property. The bill also supplements Title 46 with provisions concerning concurrent ownership of real and personal property by a husband and wife.

The bill prohibits the use of restrictive covenants in instruments affecting real property, such as contracts, mortgages, leases, deeds or conveyances, by prohibiting the sale, assignment, rental or other transfers to any person because of the person's marital status or sex. Currently the law prohibits such restrictions for reasons of race, creed, color, national origin, or ancestry. The bill also makes gender-neutral who may execute a deed of confirmation in the event of dissolution of a corporation or the death of its members.

With respect to concurrent ownership, the bill provides that a tenancy by the entirety shall be created when a husband and wife take title to an interest in real or personal property as husband and wife; or become lessees of real or personal property as husband and wife under an agreement containing an option to purchase; or when an owner spouse transfers real or personal property to the nonowner spouse and the owner spouse jointly. During a marriage, or upon separation, neither spouse may sever, alienate, or otherwise affect the spouse's interest in tenancy by the entirety without the written consent of the other spouse. Upon death, the surviving spouse shall own the property as a whole. An instrument creating a tenancy in common or joint tenancy between a husband and wife, either of which enables each spouse to encumber the property without the consent of the other, must be expressly stated in any instrument creating such a property interest.

The bill repeals N. J. S. A. 46:2D–1 which creates a presumption that when a mortgage is entered into or assigned to a husband and wife, the property is held as joint tenants.

The amendments adopted by the committee deal with those sections of the bills which prohibit the sale or rental of real property because of sex or marital status. The amendments provide that this prohibition shall not be construed to prevent the refusal to sell or rent when a residential facility is exclusively planned for or exclusively occupied by one sex. Under the amendments, this prohibition is also not to be construed as preventing any place of public accommodation which is in its nature reasonably restricted exclusively to persons of one sex, such as a camp, bathhouse, dressing room or comfort station from denying or refusing service to persons of the opposite sex.



STATE OF NEW JERSEY

# COMMISSION ON
# SEX DISCRIMINATION
# IN THE STATUTES

# TOWARD ECONOMIC EQUITY

## RECOMMENDATIONS FOR THE ELIMINATION
## OF SEX DISCRIMINATION IN THE
## CREDIT, HOUSING, INSURANCE, PENSIONS,
## PROBATE, PROPERTY, PUBLIC OBLIGATIONS
## AND TAX STATUTES

### *EXECUTIVE SUMMARY*

JANUARY 1985

TRENTON, NEW JERSEY

THIRD REPORT

## PROPERTY

During marriage neither spouse should be able to encumber the family's property so that the other spouse is left financially destitute. Spouses should not be able to encumber jointly owned marital property without the consent of the other spouse. Upon death, ownership of marital property should automatically reside in the surviving spouse.

The Commission recommends three policy changes in the area of property.

The Commission recommends that certain sex-based provisions concerning conveyances of real property be amended, such as those which restrict the execution of certain confirmatory deeds to male heirs.

New Jersey case law defining the concurrent ownership of property between husband and wife is revised. At common law, the husband enjoyed exclusive control and power over the property. By virtue of New Jersey's Married Women's Property Act, enacted as a property reform during the mid-nineteenth century, a married woman could own or manage property. Presently, husband and wife hold marital property as tenants in common during their joint lives with the right of survivorship (each one owns the whole) retained, as at common law. As tenants in common each spouse has a separate right to encumber the property without the consent of the other spouse.

15

The Commission recommends the enactment of a tenancy by entirety provision so that neither spouse may encumber property during the marriage or upon separation without the mutual written consent of both spouses. Upon the death of one spouse, the surviving spouse automatically owns all marital property. This reflects the Commission's policy that marriage is an economic partnership.

Women still constitute the majority of spouses whose names do not appear on the deed to the family home. This allows a husband to independently make economic decisions that may place his wife and family in financial jeopardy. Therefore, the absence of protections against forfeiture of homes due to debts incurred by one spouse impacts more heavily and in a discriminatory manner upon women. In order to shield a debtor-spouse's family from the drastic penalty of losing the family home and becoming charges of the State, the Commission recommends the enactment of a homestead exemption. The homestead exemption protects a debtor's family from becoming destitute and being forced to seek public assistance. The first $10,000 or 50% of the equity in the homestead property from the sale of the homestead property goes to the debtor's family. No formal declaration of homestead property is required before the debtor may claim the homestead exemption. The homestead exemption is not absolute and does not extend to all debts incurred by the debtor. To protect the non-owner spouse, the Commission creates a presumption that both spouses contributed to the homestead property.

If a judgment debtor within the State chooses to file for federal bankruptcy, the judgment debtor would be pre-

cluded by §522 of the Bankruptcy Reform Act of 1978, which sets out the federal exemptions, from also claiming the State homestead exemption. The judgment debtor would be barred from claiming a double exemption for a homestead under both State and federal law, and is forced to choose between the two exemption schemes.

BILL NUMBERS:   Senate Bill 2111
                        Senate Bill 2105



STATE OF NEW JERSEY

# COMMISSION ON
# SEX DISCRIMINATION
# IN THE STATUTES

## TOWARD ECONOMIC EQUITY

### RECOMMENDATIONS FOR THE ELIMINATION
### OF SEX DISCRIMINATION IN THE
### CREDIT, HOUSING, INSURANCE, PENSIONS,
### PROBATE, PROPERTY, PUBLIC OBLIGATIONS
### AND TAX STATUTES

JANUARY 1985

TRENTON, NEW JERSEY

THIRD REPORT

3 3009 00070 5972

# CHAPTER 6—PROPERTY

The Commission's extensive review of marriage and family law within New Jersey during 1980 and 1981 revealed the inadequacy of economic protection and the absence of economic recognition afforded the non-wage earner spouse during marriage. Since the vast majority of non-wage earners in marriage are women, the inadequacy of economic recognition and protection under New Jersey law has a disparate, negative impact on women. Furthermore, even those women who do work outside the home earn, on the average, far less than their husbands because of the discrimination they face in the labor market.[136]

In its report on "Sex Discrimination in Marriage and Family Law"[137] issued in 1981, the Commission presented recommendations to eliminate sex based discrimination in the statutes which determine the distribution of marital assets at the time of divorce. The elimination of sex based discrimination in the statutes which determine the interests and estates in real property during a marriage is an extension of the Commission's study of family law. The Commission's recommendations for changes in New Jersey Statutes Annotated Title 46 are based on the same principle that was the basis of its recommended changes to New Jersey Statutes Annotated Title 37 the Married

---

[136]Commission on Sex Discrimination in the Statutes, "Wage Discrimination in New Jersey State Service: An Analysis of the Data," March 1983.

[137]Commission on Sex Discrimination in the Statutes, "Sex Discrimination in Marriage and Family Law," October 1981.

Women's Property Acts[138] (see Senate Bill 552). The Commission's position is that marriage is an economic partnership and the laws of a state should reflect this principle.

Although New Jersey has adopted the quasi-community concept of equitable distribution at divorce, and has reformed its probate laws to reduce sex-related inequities (see Chapter 5 - Probate) the fact remains that in New Jersey if a husband is a wage earner and a wife is a homemaker, she has few marital property rights in an ongoing marriage because the wage earner is usually the title holder and controls the assets.[139]

As previously stated, an underlying concept which has guided this Commission in formulating its recommendations, is that marriage is an economic partnership in which both parties have obligations and duties. Additionally, both spouses are entitled to share equally in the gains and acquisitions of the marriage partnership during its existence. Only a partnership model of management, control and legal ownership during marriage will ensure that an egalitarian property system within New Jersey is realized.

---

[138]The Married Women's Property Acts were enacted during the mid-nineteenth century to grant to married women the same legal property rights that single women and men possessed.

[139]Brown, Barbara A. and Freedman, Ann E. et al., Women's Rights and the Law, New York: Praeger Publishers, 1977.

Although a husband's earnings may be the immediate source of marital assets, it is the combined labor and industry of both spouses which contributes to the acquisition of these assets.[140] Therefore, a wife need not "purchase," or contribute money to the acquisition of property in order to hold an interest in real or personal property on which her name appears on a written instrument of title. In each of the Commission's recommendations for changes in the statutes regarding property rights, a non-wage earner spouse is credited for her or his labors at home; the work of a homemaker is assigned value during the lifetime of the marriage.

What the Commission has recommended is more than just economic protection for a homemaker; the Commission has sought to create a present, economic recognition of the value of the work done by the spouse who works at home.

---

[140]Id.

## TENANCY BY THE ENTIRETY

Ownership of marital property should reflect an economic partnership principle. Tenancy by the entirety, which is one of three forms of property (the other two are joint ownership and tenants in common), is the form of property ownership that is restricted to married persons. At common law, the tenancy by entirety was based on the concept of marital unity,[141] whereby the husband enjoyed exclusive control and power over marital property. The wife's only right was that of survivorship. The right of survivorship guaranteed the wife full ownership of the entireties property, without probate costs, if her husband predeceased her.

In the mid-nineteenth century, the Married Women's Property Acts accorded married women full control over their _separate_ property, but among the states and the courts there is a difference in opinion as to the impact of these acts upon entirety property.[142]

The majority of the states[143] that have retained tenancy by the entirety provide that neither spouse can alienate or

---

[141] R. Powell, Real Property 683 (rev. ed. 1970) "Husband and Wife Were One, But Husband Was the One," cited in M. Spiessbach, "Weeding Out the Troublesome Plant of Tenancy by the Entirety," 2 Seton Hall L. Rev. 415, 416 (1971).

[142] Johnston, "Sex and Property: The Common Law Tradition, The Law School Curriculum and Developments Toward Equity," 47 N.Y.U.L. Rev. 1033, 1085 (1972); Phipps, "Tenancy By Entireties," 25 Temp. L.Q. 32-35 (1951).

[143] Delaware, Washington, D.C., Florida, Indiana, Maryland, Missouri, Pennsylvnia, Rhode Island, Vermont, Virginia, Wyoming.

encumber entirety property without the consent of the other spouse. Entirety property is protected from the separate debts of either spouse. The creditor must wait to determine which spouse survives and then may only collect on a separate debt if the debtor spouse survives. This interpretation offers protection to the nondebtor spouse.

New Jersey court decisions represent the minority view of the effect that the Married Women's Property Act enactment had on tenancy by the entirety. In <u>King v. Greene</u>, 30 N.J. 395 (1959), the New Jersey Supreme Court held that under tenancy by entirety, husband and wife hold as tenants in common during their joint lives with a right of surivorship. Each spouse has a separate right to a one-half interest in entirety property during the marriage subject to the survivorship rights of the other spouse. Either spouse can alienate or encumber his or her one-half share. Thus creditors may seek partition or an accounting to satisfy one spouse's separate debt. The creditor is also entitled to collect against the right of survivorship of the debtor spouse if the debtor survives. If the nondebtor spouse survives, the nondebtor is entitled to full ownership of the entirety property.

In general, entireties ownership is intended to protect property of the marital unit by insulating it from claims of separate creditors or from mismanagement by either spouse operating alone. These protective features of a tenancy by the entirety make it beneficial to wage-earner spouses as well as non-wage earner spouses.

If the property is protected from the separate creditors of each spouse during the marriage, the wage earner, usually the husband, can satisfy a desire to assure some measure of security for his or her non-wage earner spouse and their children. This can be done without the wage earner relinquishing control over the entireties property. At the same time, a non-wage-earning spouse benefits from tenancy by the entirety by gaining ownership and control of property that, in most instances, would otherwise belong to the wage earner alone. "A non-wage earning spouse or one who has custody of the children is protected during separation from being forced either to purchase the other half of the property or to find new housing at a time of financial insecurity."[144] The survivorship rights under tenancy by entirety assure passage of the property without the complexities or costs that may accompany probate.

The benefits that enure to married persons who hold property as tenants by the entirety have led to the Commission's decision to recommend the enactment of a tenancy by the entireties statute. The statute would create a presumption that husband and wife hold as tenants by the entirety whenever they hold real or personal property together, unless the document of title expresses otherwise. In addition, the statute would require that entirety property be jointly managed by both spouses. These provisions will bring New Jersey into

---

[144]Babock, Barbara Allen, and others. Sex Discrimination and the Law: Causes and Remedies. Boston: Little, Brown and Co., 1975.

line with the majority interpretation of tenancy by the entirety and will encourage a greater number of spouses to hold entirety property.

## STATUTE

**N.J.S.A. 46:3-23**

Restrictions upon transfer or use of realty

## SYNOPSIS

This statute prohibits the use of discriminatory clauses in the conveyance of real property and lists protected classes. Sex and marital status are not listed.

## RECOMMENDATION

Amend

## BILL NUMBER AND SECTION CITATION

Section 1 of Senate Bill 2111

## DISCUSSION

The Commission recommends the expansion of this anti-discrimination protection to include sex as a protected class. The Commission also recommends that the bill be amended in committee to include marital status. For a complete discussion of the Commission's rationale see Chapter 1 – Credit of this report.

## STATUTE

N.J.S.A. 46:7-1

Confirmatory deeds in conveyance by defunct corporations

## SYNOPSIS

This statute restricts the execution of certain confirmatory deeds to male heirs, the oldest adult son or the oldest adult grandson.

## RECOMMENDATION

Amend

## BILL NUMBER AND SECTION CITATION

Section 2 of Senate Bill 2111

## DISCUSSION

The Commission amends this statute to permit female as well as male heirs to execute confirmatory deeds of conveyances of corporation or association property.

## STATUTE

N.J.S.A. 46:7-2

Transfers of real estate for benefit of unincorporated religious groups

## SYNOPSIS

This statute is similar to N.J.S.A. 46:7-1, and restricts the execution of certain confirmatory deeds to male heirs, the oldest adult son, or the oldest adult grandson.

## RECOMMENDATION

Amend

## BILL NUMBER AND SECTION CITATION

Section 3 of Senate Bill 2111

## DISCUSSION

The Commission amends this statute to permit female as well as male heirs to execute confirmatory deeds of conveyances for the benefit of unincorporated religious groups.

N.J.S.A. 46:9-9

Assignments by married women

## SYNOPSIS

This statute, which deals with assignments of real property, provides that an assignment made by a married woman without her husband is valid.

## RECOMMENDATION

Amend

## BILL NUMBER AND SECTION CITATION

Section 4 of Senate Bill 2111

## DISCUSSION

The statute was enacted as part of the Married Women's Property Acts reforms of the nineteenth century to ensure that a woman retained property rights after her marriage. The Commission's policy (delineated in the "Sex Discrimination in Marriage and Family Law" report) is to delete sex-based provisions if they are no longer relevant. The Commission's proposed legislation, Senate Bill 552 either amends or repeals similar provisions in the New Jersey Statutes Annotated. In order to ensure that common law disabilities are not revived, section 5 of Senate Bill 552 provides that: "a person is guaranteed rights in every area of law without regard to sex or marital status, except as otherwise provided in this amendatory and supplementary act. Nothing in this amendatory and supplementary act shall be construed to revive common law disabilities based on sex or marital

status." The Commission therefore amends this statute to delete the provision allowing a married woman to make an assignment.

## STATUTE

N.J.S.A. Title 46:14-1

Acknowledgments by married women

## SYNOPSIS

This statute provides that a married woman may freely execute deeds and instruments enumerated in the statute as if she were a femme sole.

## RECOMMENDATION

Repeal

## BILL NUMBER AND SECTION CITATION

Section 9 of Senate Bill 2111

## DISCUSSION

The Commission repeals this statute as it is no longer relevant by today's standards of equality. For a complete discussion of the Commission's rationale see page 629 of this report.

N.J.S.A. 46:3-1 et seq.

Estates and interests in property and alienation thereof in general

## SYNOPSIS

This chapter regulates the holding and transfer of interests in property.

## RECOMMENDATION

Supplement

## BILL NUMBER AND SECTION CITATION

Sections 5-8 of Senate Bill 2111

## DISCUSSION

At common law, the tenancy by entirety was based upon a concept of marital unity, whereby the husband enjoyed exclusive control and power over entirety property. The wife's only right was that of survivorship. By virtue of the Married Women's Property Acts, the wife retained the right to manage and control her separate share of the property.

Entireties ownership is intended to protect marital property by insulating it from the claims of separate creditors or from mismanagement by either spouse operating alone. To ensure this benefit to married persons the Commission recommends the enactment of a tenancy by the entirety provision which creates a presumption that husband and wife hold as tenants by entirety whenever they hold real or personal property together, unless the document of title expresses

otherwise. In addition, the Commission protects the entireties estate by requiring that entirety property be jointly managed. Neither spouse may sever, alienate or otherwise affect their interest in entirety property during the marriage or upon separation without the mutual written consent of both spouses. Upon death, the surviving spouse owns the property as a whole. The Commission believes that this tenancy by entirety provision will ensure that a greater number of spouses hold as tenants by entirety, thereby receiving the benefits of the entireties estate.

# HOMESTEAD

Almost every state has homestead laws in one form or another, the earliest having been enacted in Texas in 1829. They are statutes in most jurisdictions, but also exist in the form of constitutional provisions.[145] The general purpose of the homestead laws is the security of the family, which in turn enures to the benefit of the community to the extent that such security prevents pauperism (with the resultant drain on the state's "welfare" resources) and provides the person benefited with some measure of stability and independence.[146] The policy underlying homestead laws thus parallels the fresh-start philosophy which underpins bankruptcy laws.[147]

The three most common categories of homestead laws are (1) those which exempt homesteads from execution for certain types of debt; (2) those which prohibit a homestead owner from selling or mortgaging the homestead without his or her spouse's consent (see Chapter 5 - Probate, page 573 of this report for a complete discussion of this issue); and (3) those which allow a homestead owner's family to remain in the homestead after the owner's death.

---

[145]Homestead laws are American in origin and did not exist at common law. C.J.S., Homesteads §2.

[146]Casner, A. James, 1 <u>American Law of Property</u>, Homestead Rights, §5.75, Little-Brown: Boston, MA 1952.

[147]One of the principal devices employed by the federal Bankruptcy Act to ensure that a bankrupt will have the ability to make a fresh start is the express recognition of existing state law property exemptions (e.g. homestead exemptions). 11 U.S.C. 522(1978).

Although the definition of homestead varies from state to state, it is generally thought of as the dwelling and land which an individual or family occupies as its primary residence. (In some jurisdictions, family farms and businesses enjoy the homestead privilege.) The homestead protection from creditors usually exists in the form of a dollar value exemption. For example, if a state law grants a $50,000 exemption, a family home worth $45,000 will be totally protected. If the home is worth $75,000, a creditor may be allowed to take a severable part of the building or land which is worth $25,000. If the homestead is not severable, the court may allow a sale of the home, giving the debtor $50,000 from the proceeds.

Most homestead laws are not absolute. Certain types of debts, such as purchase money mortgages, taxes, and debts incurred in the improvement of the homestead are not covered. In addition, some states deem it fair to allow homesteads to be subject to creditors' claims for debts incurred before the debtor acquired the homestead.

Finally, homestead laws, according to students of women's rights in America, were a prelude to the nineteenth century Married Women's Property Acts.[148] Although homestead laws did not change married women's status as regards the legal ownership of property, they created certain rights which made women less vulnerable to the imprudent management of property by their husbands. From 1877 until 1951, New Jersey had comprehensive homestead laws which offered families three distinct

---

[148]Chused, "Married Women's Property Law," 71 Georgetown L.J. 1359, 1361 (1983).

protections: (1) a dollar value exemption from the execution sale of a home occupied by a debtor's family (N.J.R.S. 2:26-110); (2) a prohibition against the sale or encumbrance of a family home by an owner-spouse without the consent of the non-owner spouse (N.J.R.S. 2:26-121); and (3) a provision allowing the "widow" and children of the deceased owner of a family home to occupy it until the youngest child reached the age of majority and the "widow" died (N.J.R.S. 2:26-111).

In 1951, when Titles 2 and 3 were revised, the homestead statutes were eliminated with no explanation.[149] The change is particularly puzzling, since the revisions of Titles 2 and 3 were supposed to affect procedural statutes, but work no changes in substantive law. The revisions were mandated by the Legislature in 1950

> to reconcile and make more consistent the provisions of the two Titles. . . with each other and with the Rules of Practice and Procedure promulgated by the State Supreme Court. [The revisors'] work included the correction of errors existing in these Titles and the elimination of provisions which were redundant or which, in the Committee's judgment, were more includable in the Rules of Court.[150]

---

[149]Senate Bill No. 1 of the 175th Legislature, which repealed Title 2 and enacted Title 2A had no legislative statement. In addition, the proceedings of the 1951 New Jersey Judicial Conference, which reviewed the new Title 2A, included no comment on the removal of the homestead provisions.

[150]The Trenton Letter, December, 1951, printed in an addendum to the laws of the 175th New Jersey Legislature, New Jersey Session Law Service, Vol. 1951 (West).

An editorial in the New Jersey Law Journal at the time explained that the revisions were made because Titles 2 and 3 contained many legislatively created rules which govern court practice and procedure, and the 1947 New Jersey Constitution committed the entire field of practice and procedure to the jurisdiction of the State Supreme Court.[151] One later editorial, however, did warn New Jersey lawyers that the revisions were in reality not just a procedural reorganization after all, and enumerated some of the substantive changes which had been made.[152] The editorial was, unfortunately, silent on the subject of homestead laws.

Now, New Jersey is one of only seven jurisdictions which has not either constitutionally or statutorily created homestead provisions to secure marital assets from the reach of certain types of creditors.[153] Homestead laws particularly benefit non-wage earner spouses who remain at home and maintain the family residence. In most instances the non-wage earner spouse is a woman, therefore the absence of homestead laws impacts most heavily upon women and children within the family unit.

Several developments in New Jersey law in the years since the disappearance of the homestead statutes

---

[151]"The Completed Revision of Revised Statutes Titles 2 and 3," 74 N.J.L.J. 356.

[152]"Changes of Substance in New Jersey Statutes Titles 2A and 3A," 75 N.J.L.J. 324.

[153]The jurisdictions which have not enacted homestead protections are: Delaware, District of Columbia, Maryland, Pennsylvania, Connecticut, Rhode Island, and New Jersey.

indicate that the Legislature, the courts, and the people of New Jersey recognize the need for homestead protections.

The most recent of these developments was the enactment in 1979 and 1980 of two statutes which together recreate the safeguards that New Jersey residents had enjoyed under N.J.R.S. 2:26-120 of the repealed homestead law. N.J.S.A. 3B:28-3 and 3B:28-3.1 (See Chapter 5 - Probate page 573 of this report) give spouses a right of possession in their matrimonial residence, whether or not they are the owners. Subject to a few exceptions, owner spouses may not sell or mortgage their homes without spousal consent.[154] Thus, one of the three protections which the repealed homestead law had provided has been restored by the Legislature.

When the new probate code was passed in 1977 and 1979, New Jersey's old quarantine law was incorporated into it. The quarantine statute[155] provides, on a temporary basis, the protection which N.J.R.S. 2:26-111 (the repealed probate homestead law) gave to the surviving spouses of homestead owners. While N.J.R.S. 2:26-111 allowed widows and families to stay in the homestead until the children reached the age of majority and the widow died, the quarantine statute simply permits a widow or widower

---

[154]The legislative statement of Assembly Bill 20 of the 1978 session (the bill which became 3A:35-5 in 1979 and then 3B:28-2 and 3B:28-3 in 1980) contained no comment on the section of the bill which reestablished the requirement of spousal consent for the alienation or mortgage of 'homesteads'.

[155]N.J.S.A. 3B:28-8.

to stay in "the mansion house" until dower or curtesy is assigned. The retention of this quarantine statute clearly shows that the Legislature did not wish to allow citizens to become homeless upon the death of their spouses. The expectation was that the surviving spouses would either be allowed to stay in the home, or receive enough money for their dower/curtesy interest to provide for themselves.[156] (For a further discussion of this issue see Chapter 5 – Probate, page 573 of this report.)

That the people of New Jersey (as well as the New Jersey Legislature) place great importance on the ability of citizens to keep their homes was proven in 1975. In that year, an amendment to the State Constitution was ratified[157] which permitted the Legislature to allow homestead tax rebates related to the property taxes which New Jersey residents pay. In 1976, the people reaffirmed their commitment to protect "homesteaders" by allowing the Legislature to give disabled persons and people over the age of 65 extra tax credits.[158]

---

[156]The purpose of quarantine was not only to provide the widow with a dwelling place, but also to compel the heirs to make assignment of dower. McLaughlin v. McLaughlin, 22 N.J.Eq. 505, 509 (E&A 1871). The quarantine law has protected widowers since 1929. The need to expand New Jersey's quarantine law will be discussed infra.

Also illustrative of the intention of New Jersey lawmakers that surviving spouses not become homeless, is the fact that New Jersey's dower and curtesy laws were replaced in 1977 and 1979 by the more extensive protections of an elective share statute.

[157]ART. 8 §1 PAR. 5.

[158]Id.

Finally, and most significantly, the New Jersey Supreme Court has recognized the need for families to be protected from the forfeiture of their homes due to the debts of an owner-spouse. In Newman v. Chase, 70 N.J. 254 (1976), a plaintiff creditor brought an action for partition of the Chase family home. Mr. and Mrs. Chase owned the house under New Jersey law as tenants by the entirety, and Mr. Chase's interest in the home had been sold to the plaintiff through bankruptcy proceedings. Since Mrs. Chase refused to allow plaintiff Newman to share the house with her, he was absolutely entitled under New Jersey case law[159] to the relief of a court-ordered division of the property into separate parcels, and the allocation of one or more parcels to each tenant. Consciously departing from precedent, the court held that partition was not the absolute right of a cotenant's creditor, where the property involved was a family home.[160]

Justice Mountain decided that the important public interest in families keeping their homes and not becoming charges upon the State outweighed the social policy that a debtor's assets should be available to his creditors. The court explained:

> In effect, the special treatment of tenancies by the entirety in New Jersey serves the purposes which are achieved in many states by statutory or constitutional homestead laws... Just as the homestead exemptions effect a

---

[159] Schulz v. Ziegler, 80 N.J. Eq. 199 (E&A 1912).

[160] Newman v. Chase, supra (note 97) at 264.

> balance between two competing social policies
> – on the one hand, that a debtor's assets should
> be available to his creditors; on the other, that
> the family of a debtor should not become a
> charge upon the state – so can an equitable
> treatment of the rights of a purchaser of one
> spouse's interest in a tenancy by the entirety
> serve to achieve a similar balance. (footnotes
> and citations omitted).[161]

The decision in Newman v. Chase thus demonstrates clear judicial approval of the public policy underpinning homestead provisions.

The legislative and judicial efforts since 1951 to shield families from forfeiture of their homes have fallen far short of the protections which families enjoyed under the homestead laws repealed in that year. Although statutes N.J.S.A. 3B:28-3 and 3B:28-3.1 protect non-owner spouses from the unilateral sale or mortgage of the homestead by owner spouses, the statutes do not protect the homestead from the judgment creditors of owner spouses.

The protections of tenancy by the entirety in New Jersey as defined in Newman v. Chase are available only to non-debtor spouses who are listed as co-owners on the deed to the family home (or on a document of transfer). Homestead laws are therefore needed to protect non-owner spouses (as well as children) from forfeiture of the

---

[161]A surviving spouse who has been bequeathed property other than the family home also has no express right to stay in the home until the inheritance is translated into resources which he or she can use to procure another home.

<u>home to the owner's creditors.</u> Moreover, the protections which the court allowed the Chase family in <u>Newman v. Chase</u> are not absolute.

For example, the court still has the equitable discretion to order partition when it feels that debtors might be using their homes to sequester assets from creditors.[162] Since partition is decided on a case-by-case basis, neither debtor-homeowners nor their creditors can rely with certainty upon an allowance or denial of the remedy.[163]

In addition, tenancy by the entirety does not shield families from the forfeiture of their homes when the husbands and wives are joint debtors. Finally, even though the court in <u>Newman v. Chase</u> refused to order partition, they did allow the plaintiff an accounting for half of the rental value of the home, minus payments which Mrs. Chase made for taxes, insurance, repairs, and the mortgage.[164] This burden of accounting does not comport with the public policy of keeping debtors' families in their homes and off of public assistance since it may plunge families into economic instability and make it impossible for them to continue to meet the costs of staying in their homes.[165]

New Jersey should have laws which protect its citizens from the forfeiture of their homes due to debt or the

---

[162] <u>Newman v. Chase</u>, supra note 97 at 266, citing <u>Way v. Root</u>, 174 Mich. 418, 140 N.W. 577, 579 (1913).

[163] Brecker, "Survey of Property Law," 30 <u>Rutgers L. Rev.</u> 764, 771 (1977).

[164] <u>Newman v. Chase</u>, supra note 97 at 267-68.

[165] Brecker, <u>supra</u> note 21 at 771.

death of spouses. As stated previously, the absence of protection against the forfeiture of homes impacts more heavily upon women than men. The Legislature, the judiciary, and the people of New Jersey have attempted to provide such protection, but the result has been discrete statutes and judicial remedies which cover some people and situations while not covering others.

Therefore, the Commission recommends the enactment of a homestead exemption to protect families from the forfeiture of their homes. By extending economic protection to non-wage earner spouses, whose names may or may not appear on the document of title for the homestead property, present economic recognition will be given to non-wage earner spouses who maintain the family home. A homestead exemption will protect and preserve the independent integrity of a family plunged into economic disaster by unwise financial decisions, and at the same time relieve the burdens placed on the state to support these families.

The availability of a homestead exemption will provide New Jersey debtors several alternatives to protect the family when the debtor also chooses to file for federal bankruptcy. The Bankruptcy Reform Act of 1978, section 522(d) allows a debtor to choose either the exemptions provided in section 522(d)[166] or those provided by state

---

[166]The exemptions provided by §522(d) are as follows:
> (1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

and federal laws.[167] Although the bankruptcy code grants the states the power to prevent debtors from choosing the federal exemptions,[168] New Jersey has not chosen to opt out of the federal bankruptcy scheme. Consequently a New Jersey debtor can file for bankruptcy and claim either the state or the federal homestead exemption amount.

Because the federal and the state homestead amounts are not significantly different ($7,500 and $10,000 respectively) in an individual case there will be no great advantage to choosing one exemption amount over the other. However, if a husband and wife choose to file for joint bankruptcy, the federal homestead exemption amount for state joint debtors is more attractive than the state homestead exemption.

Under the federal scheme each joint debtor is entitled to a $7,500 homestead exemption.[169] This allows a husband

---

[167]Exemptions available under federal nonbankruptcy law include: foreign service retirement and disability payments, 22 U.S.C §4060; social security payments, 42 U.S.C. §407; wages of fishermen, seamen and apprentices, 46 U.S.C. §601; civil service retirement benefits, 5 U.S.C. §8346; Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C §916; Railroad Retirement Act annuities and pensions, 45 U.S.C. §231m; veterans benefits, 38 U.S.C. §3101; special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. §562; and injury or death compensation payments from war risk hazards, 42 U.S.C. §1717.

[168]Section 522(b)(1) provides that "an individual debtor may exempt from property of the estate ... property that is specified under subsection (d) unless the State law that is applicable. . . specifically does not so authorize."

[169]11 U.S.C. 522(m) (Supp.IV 1980) provides that "[t]his section shall apply separate with respect to each debtor in a joint case."

and wife to retain a total of $15,000 under the federal scheme, while under the New Jersey scheme recommended by the Commission joint claimants would be limited to a single homestead exemption of $10,000 or less on the same dwelling.

The Commission has chosen this limiting language to proscribe the doubling of the state homestead exemption.[170] There is no basis for creating a homestead exemption which would operate differently for bankruptcy purposes, so as to allow a double exemption for husbands and wives who are joint debtors, but only allow a single exemption for non-bankruptcy purposes involving executions on money judgments. Any increase or decrease in the homestead exemption figure should come from uniform legislative direction.

Unlike the federal exemption, the homestead exemption which the Commission recommends is tied to specific real property owned and occupied as a principle residence. That jointly filing spouses in bankruptcy may have separate exemptions does not mean that the exemptions must be doubled.[171] Real property occupied as a

---

[170]The courts are split on the issue of whether or not joint debtors can claim separate state homestead exemptions on their bankruptcy forms and, as a result, double what they would be entitled to claim under the state law alone. Representative courts which have allowed a double exemption are: Cheeseman v. Nachman, 656 F.2d 60 (4th Cir. 1981); In re Rizzo, Bkrtcy.; 21 B.R. 913 (1982); In re Ageton, Bkrtcy., 14 B.R. 833 (1981). Representative courts which have prohibited the doubling of exemptions are; In re Brooks, 31 B.R. 302 (Bkrtcy. 1983); In re Feiss, 15 B.R. 825 (E.D.N.Y. 1981).

[171]In re Brooks,supra note 170.

principle residence or homestead should carry with it a single $10,000 exemption under the recommended state homestead exemption scheme. The Commission has used the same limiting language the California Law Revision Commission recommended as an amendment to the California homestead exemption statutes in order to eliminate the large double exemptions which were being claimed.[172]

The fact that the bankruptcy code allows separate federal homestead exemptions to debtors in a joint case does not conflict with a state provision allowing only one homestead exemption for the full amount to joint debtors. Each joint debtor may claim the same homestead exemption separately for the same real property, but the value of the exemption is not cumulative. "The same value may be used by either spouse as often as is necessary against his or her creditors, but when the real property is finally sold at a forced sale only one

---

[172]15 Cal. L. Rev. Comm. Reports 2001; 82 A.J. 9356. The California amount of homestead exemption C.C.C.P. §704.730(b) now states:

> (b) Notwithstanding any other provision of this section, the combined homestead exemptions of spouses on the same judgment shall not exceed forty-five thousand dollars ($45,000), regardless of whether the spouses are jointly obligated on the judgment and regardless of whether the homestead consists of community or separate property or both. Notwithstanding any other provision of this article, if both spouses are entitled to a homestead exemption, the exemption of proceeds of the homestead shall be apportioned between the spouses on the basis of their proportionate interests in the homestead.

homestead exemption is available to the joint debtors from the proceeds of the sale."[173]

The fact that joint debtors can claim $15,000 under the federal exemption, while they would be limited to $10,000 under the state scheme should mitigate in favor of the New Jersey Legislature raising the homestead exemption amount to at least $15,000 or 50% of equity, whichever is less.

A further note of explanation is necessary to clarify why the Commission has chosen to recommend a modest homestead exemption amount. The homestead exemption amounts in other states range from a low of $5,000 in Vermont and Virginia to a high of $45,000 for senior citizens in California. This wide range of figures indicates that the determination of an appropriate homestead exemption amount is a decision best left to the Legislature. The Commission believes that since it is the Legislature's duty to review and act upon public policy considerations (involved in setting the homestead exemption amount) it was best to recommend the modest homestead exemption amount of $10,000 or 50% of equity, whichever is less. This amount is particularly modest in light of the fact that the Commission also recommends the inclusion of language which would limit the combined homestead exemption amount of two claimants on the same homestead property to the $10,000 or 50% of equity figure, or whichever is lesser. It is the

---

[173] In re Brooks, supra note 5 at 307. See also, In re Bartlett, 24 B.R. 605 (Bkrtcy. App. 9th Cir. 1982).

hope of the Commission that the Legislature will, after a careful analysis of the needs of families and creditors, achieve a balance which affords homeowners within the state an exemption greater than $10,000.00. A generous homestead exemption would more easily allow families to make a fresh start after financial difficulties.

N.J.S.A. 2A:17 et seq.
Executions

## SYNOPSIS

This chapter outlines the goods and chattel subject to executions on judgments obtained in any court of record in this state, and provides the procedures for these executions.

## RECOMMENDATION

Supplement

## BILL NUMBER AND SECTION CITATION

Sections 1-13 of Senate Bill 2105.

## DISCUSSION

Women still constitute the majority of financially dependent spouses, and often their names do not appear on the deed to the family home. This allows a husband independently to make economic decisions that may place his wife and family in financial jeopardy. Consequently, the absence of protections against forfeiture of homes due to debts incurred by one spouse impacts more heavily and in a discriminatory manner upon women. In order to shield a debtor-spouse's family from the drastic penalty of losing the family home and becoming charges of the State, Chapter 17 of Title 2A is supplemented to provide for a homestead exemption to protect the legal residence of a debtor or debtor's family from attachment and levy of execution by judgment creditors.

The Commission recommends that no formal declaration of homestead be required before the debtor may claim the homestead exemption and that waiver of the homestead exemption be prohibited. These provisions are to ensure that the maximum number of New Jersey residents may benefit from the homestead exemption, even those who are not aware of the homestead exemption until a judgment has been issued against them.

The homestead exemption should not be absolute and should not extend to all debts incurred by the debtor. The homestead exemption should not extend to an execution order or other process issued to satisfy debts incurred for (1) the purchase money mortgage on the homestead property; (2) debts incurred for the improvement of the homestead property; (3) a lawful claim for taxes or assessments; (4) child support or alimony; and (5) debts incurred prior to the recording of the deed of the homestead property.

If the homestead property can be set off so that the claimant can retain the dwelling and a portion of the land which does not exceed the homestead exemption amount, the Commission recommends that the court be required to order such a set off. This would ensure that a family remain in the family dwelling, if at all possible.

When no set off is possible, the court must order the sale of the homestead property. So that the claimant's family may secure housing, the homestead exemption amount should be paid to the claimant before the remaining proceeds from the sale are distributed to the judgment creditors. The homestead exemption amount should be

exempt from execution for eighteen months, thus affording the claimant ample opportunity to find another dwelling.

In recognition of the economic value a non-wage earner spouse contributes to the family home, the Commission recommends the creation of a presumption "that each spouse made an equal contribution to the fair market value of the homestead property while the spouses were married" (see section 4 of Senate Bill 2105).

# SENATE, No. 2111

# STATE OF NEW JERSEY

INTRODUCED JULY 30, 1984

By Senators LIPMAN and VAN WAGNER

Referred to Committee on Judiciary

An Act concerning the elimination of sex as a basis for conferring certain rights and supplementing chapter 3 of Title 46 of the Revised Statutes.

1    Be it enacted by the Senate and General Assembly of the State
2    of New Jersey:
1      1. Section 1 of P. L. 1965, c. 67 (C. 46:3–23) is amended to read as
2    follows:
3      1. Any promise, covenant or restriction in a contract, mortgage,
4    lease, deed or conveyance or in any other agreement affecting real
5    property, heretofore or hereafter made or entered into, which
6    limits, restrains, prohibits or otherwise provides against the sale,
7    grant, gift, transfer, assignment, conveyance, ownership, lease,
8    rental, use or occupancy of real property to or by any person
9    because of race, creed, color, national origin, [or] ancestry, *or sex*
10   is hereby declared to be void as against public policy, wholly unen-
11   forceable, and shall not constitute a defense in any action, suit or
12   proceeding. No such promise, covenant or restriction shall be listed
13   as a valid provision affecting such property in public notices con-
14   cerning such property. The invalidity of any such promise, covenant
15   or restriction in any such instrument or agreement shall not affect
16   the validity of any other provision therein, but no reverter shall
17   occur, no possessory estate shall result, nor any right of entry or
18   right to a penalty or forfeiture shall accrue by reason of the dis-
19   regard of such promise, covenant or restriction. This section shall
20   not apply to conveyances or devises to religious associations or
21   corporations for religious purposes, but, such promise, covenant or
22   restriction shall cease to be enforceable and shall otherwise become

**Explanation**—Matter enclosed in bold-faced brackets [thus] in the above bill is not enacted and is intended to be omitted in the law.
Matter printed in italics *thus* is new matter.

23  subject to the provisions of this section when the real property
24  affected shall cease to be used for such purpose.

1   2. R. S. 46:7–1 is amended to read as follows:

2   46:7–1. Whenever a corporation or association, created under
3   any law of this State, shall have made, during its corporate
4   existence, a deed or conveyance of real estate in this State, or of an
5   interest therein, and thereafter shall have ceased to exist by reason
6   of dissolution, death of its members or otherwise, and it shall be
7   discovered that an error exists in such deed or conveyance, any
8   surviving president, vice-president, director or trustee of such
9   defunct corporation or association may, by deed of confirmation,
10  containing a proper recital, correct the error in the original deed or
11  conveyance. If no one of the surviving officers hereinbefore named
12  be living, the oldest adult [son] *child*, or, if there be none living, the
13  oldest adult [grandson]*grandchild* of any such president, vice-
14  president, last surviving director or trustee may make such deed of
15  confirmation. Prior to the making of any such deed of confirmation,
16  the person claiming to be entitled to the benefit of this section shall
17  institute an action in the County Court of the county in which the
18  affected real estate is situate, or the Superior Court, against any
19  person within or without the State hereby authorized to make the
20  deed of confirmation. The court may proceed therein in a summary
21  manner or otherwise and, after considering the nature of the error
22  or defect in the original deed or conveyance, and the relief sought,
23  may, if convinced of the merit of the action, direct the proper per-
24  son to execute and acknowledge the confirmatory deed.

25  If the person so directed to execute the confirmatory deed shall
26  fail to comply with the judgment of the court within twenty days
27  after the service of a certified copy thereof [upon him], the court
28  making the judgment may, upon proof thereof, appoint a com-
29  missioner to execute the confirmatory deed.

30  The costs of the action shall be chargeable to the plaintiff.

31  A confirmatory deed executed and acknowledged or proved in
32  accordance with the terms of this section shall be as valid and
33  effective as if duly made, executed and acknowledged or proved
34  under the corporate seal of such corporation or association during
35  the period of its corporate existence.

1   3. R. S. 46:7–2 is amended to read as follows:

2   46:7–2. Where any conveyance of real estate has been, prior to
3   April sixth, one thousand nine hundred and fifteen, made, executed
4   and recorded, in which conveyance it shall appear that the persons
5   therein named as grantees have taken the title to such real estate
6   in behalf of or in the interest of any unincorporated religious asso-

7  ciation, society, meeting, congregation or organization, upon condi-
8  tion that the real estate so granted and conveyed shall be held in
9  trust for any specific uses and purposes, and such religious associa-
10  tion, society, meeting, congregation or organization shall have
11  thereafter become incorporated as a religious society under the laws
12  of this State, any surviving person or persons named in such con-
13  veyance as a grantee may, by deed of conveyance, containing a
14  proper recital, convey the real estate mentioned in the original con-
15  veyance to the religious association, society, meeting, congregation
16  or organization, in behalf of which or in whose interest title to the
17  same was taken, in its present corporate name. If there shall be no
18  such surviving grantee, the oldest adult [son] *child*, or adult
19  [grandson] *grandchild* if such [son] *child* be deceased, of such last
20  surviving grantee may make the deed of conveyance herein provided
21  for.

22  Any deed of conveyance, made by any surviving grantee or
23  grantees, or oldest adult [son] *child* or adult [grandson] *grand-*
24  *child* of the last surviving grantee, shall be as valid and effectual in
25  law as if made and executed by the grantees named in such original
26  conveyance, and the title to such real estate shall thereby vest in
27  the incorporated religious association, society, meeting, congrega-
28  tion or organization, as effectually as if the same had been in-
29  corporated at the time of the original conveyance and had taken
30  title to such real estate directly in its corporate name.

1  4. R. S. 46:9-9 is amended to read as follows:

2  46:9-9. All mortgages on real estate in this State, and all
3  covenants and stipulations therein contained, shall be assignable
4  at law by writing, whether sealed or not, and any such assignment
5  shall pass and convey the estate of the assignor in the mortgaged
6  premises, and the assignee may sue thereon in his own name, but,
7  in any such action by the assignee, there shall be allowed all just
8  set-offs and other defenses against the assignor that would have
9  been allowed in any action brought by the assignor and existing
10  before notice of such assignment.

11  [All assignments made under this section by a married woman
12  in her own right and without her husband shall be valid.]

1  5. (New section) A tenancy by entireties shall be created when:

2  a. A husband and wife together take title to an interest in real
3  property or personal property under a written instrument designat-
4  ing both of their names as husband and wife; or

5  b. A husband and wife become the lesees of real property or
6  personal property under a written instrument containing an option
7  to purchase designating both of their names as husband and wife; or

8    c. An owner spouse conveys or transfers an interest in real
9  property or personal property to the non-owner spouse and the
10  owner spouse jointly under written instrument designating both
11  of their names as husband and wife.

1    6. (New section) No instrument creating any interest in a husband
2  and wife shall be construed to create a tenancy in common or a joint
3  tenancy unless it is expressed therein or manifestly appears from
4  the tenor of the instrument that it was intended to create a tenancy
5  in common or joint tenancy.

1    7. (New section) Neither spouse may sever, alienate, or otherwise
2  affect their interest in the tenancy by entirety during the marriage
3  or upon separation without the written consent of both spouses.

1    8. (New section) Upon the death of either spouse, the surviving
2  spouse shall be deemed to have owned the whole of all rights under
3  the original instrument of purchase, conveyance, or transfer from
4  its inception.

1    9. R. S. 46:14–1 is repealed.

1    10. This acet shall take effect immediately and shall be applicable
2  to all tenancy by entireties which are created on or after January
3  1, 1985.

## STATEMENT

This bill amends and repeals certain sex based provisions in Title 46 concerning conveyances of real property.

This bill also revises New Jersey case law defining the concurrent ownership of property between husband and wife. At common law, the husband enjoyed exclusive control and power over entirety property. By virtue of New Jersey's Married Women's Property Act, married women's rights in entirety property were increased to equal those rights previously exercised by the husband alone. Presently, husband and wife hold marital property as tenants in common during their joint lives with the right of survivorship (each one owns the whole) retained as at common law. As tenants in common each spouse has a separate right to encumber the property without the consent of the other spouse.

This bill is proposed based on the recommendation of the Commission on Sex Discrimination in the Statutes. It codifies tenancy by entirety such that during the marriage neither spouse may sever, alienate, or otherwise affect their interest in entirety property during the marriage or upon separation without the mutual written consent of the spouses. This reflects the commission's policy that marriage is an economic partnership.